UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

TIME'S UP, INC., and BARBARA ROSS,

                                                                 2013 CIV. 1081

                                                                 **COMPLAINT**

                                                                 **JURY TRIAL DEMANDED**

                              Plaintiffs,

              -against-

THE CITY OF NEW YORK, MICHAEL
BLOOMBERG, in his official capacity as Mayor of the
City of New York, RAYMOND KELLY, in his official
capacity as Police Commissioner, JOHN DOHERTY, in
his official capacity as Sanitation Commissioner, JOHN
DOE and RICHARD ROE and other presently
unidentified officials, employees and/or agents of the
City of New York in their official and individual
capacities

                                               Defendants.
------------------------------------------------------------------- X

        Plaintiffs TIME'S UP, INC. ("TU") and BARBARA ROSS, by their attorneys, STECKLOW COHEN & THOMPSON, as and for their COMPLAINT against Defendants, allege the following:

### PRELIMINARY STATEMENT

        1.     This is a declaratory judgment and civil rights action to vindicate Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the constitution and laws of the State of New York. Plaintiffs were deprived of their federal and state constitutional and New York State common

law rights when police officers of the New York Police Department ("NYPD") and employees of the New York City Department of Sanitation ("DSNY") (together "CITY OF NEW YORK"), acting pursuant to a policy and on the authority of New York City Mayor Michael Bloomberg and under the direction of Commissioners Raymond Kelly and John Doherty, conducted a surprise night time raid of Zuccotti Park, a.k.a. "Liberty Park" (the "Park").

2. As part of the raid, the CITY OF NEW YORK seized and retained possession of property belonging to TU, including 16 "energy bikes," to wit, modified bicycles utilized for the purpose of generating electricity by manually powering electrical batteries. These energy bikes were manufactured by TU at TU's own expense and supplied by TU to Occupy Wall Street ("OWS") to supply clean, safe power to OWS and OWS participants for, *inter alia*, charging the batteries of electronic equipment utilized in First Amendment activities such as "live streaming," or contemporaneously broadcasting via internet.

3. The energy bikes became critical for providing power for OWS and OWS participants' First Amendment protected activities following the seizure of substantially all electrical generators by agents of Defendant City of New York on or about November 11, 2011. Brookfield Properties, custodian of the Park, had previously shut off all electrical outlets in the park. With the seizure of the energy bikes, the ability of OWS and OWS participants to document official conduct undertaken against them was irreparably impaired, as individuals were no longer capable of continuously powering recording devices without leaving the vicinity to recharge said devices.

4. None of the energy bikes were returned intact or in useable condition. Plaintiff BARBARA ROSS additionally had property seized in the November 15, 2011 raid and on one occasion thereafter, which have not been returned despite due demand and full utilization

2

of administrative remedies.  To this day, TU has not been told by the Defendants what happened to the broken and missing equipment. Upon information and belief, the missing and damaged equipment were destroyed as part of the raid, which was authorized by Defendant Mayor Bloomberg, and executed by Defendants JOHN DOE and RICHARD ROE and others presently unknown to Plaintiffs ("John Doe and Richard Roe *et al.*") in their capacity as officials, employees and /or agents of THE CITY OF NEW YORK, except with respect to their conduct related to Plaintiffs' request for punitive damages as more particularly set forth below.

## JURISDICTION AND VENUE

5.	This action is brought pursuant to 42 U.S.C §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1342(3), 1343(3), and 1343(4) as this is a civil action arising under the Constitution of the United States and the laws of the United States.  This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

6.	This Court has jurisdiction over the supplemental claims arising under New York State law pursuant to 28 U.S.C. § 1367(a).

7.	Venue is proper for the United Stated District Court for the Southern District of New York pursuant to 28 U.S.C § 1391 (a), (b), and (c) and § 1402(b) because the claims arose in this district.

## DEMAND FOR JURY TRIAL

8.	Plaintiffs demand trial by jury of all issues herein.

**PARTIES**

9. Plaintiff TIME'S UP, INC. ("TU") is a New York non-profit corporation with a principal place in Kings County, New York. TU has been designated a 501(c)(3) tax exempt public charity by the United States Internal Revenue Service. TU's mission is, *inter alia*, to educate, advocate and innovate for environmental and infrastructural sustainability in New York and beyond.

10. Plaintiff BARBARA ROSS is and was at all times relevant a resident of the City of New York. She is associated with TU.

11. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain police and sanitation departments, which act as its agents in the areas of law enforcement and sanitation, respectively.

12. Defendant MICHAEL BLOOMBERG is the Mayor of the City of New York. The Mayor is the chief executive officer of New York City. As such, he is responsible for the actions and policies of the NYPD and DSNY, and, *inter alia*, the effectiveness and integrity of the City's government operation. Pursuant to the New York City Charter, he must establish and maintain such policies and procedures as are necessary and appropriate to accomplish this responsibility. He is sued in his official capacity.

13. Defendant RAYMOND KELLY is the NYPD's Commissioner. He is appointed by the Mayor, is the chief executive officer of the NYPD, and, among other duties, is responsible for the actions and policies of the NYPD, and for the execution of all the laws and the rules and regulations of the State, City and the NYPD. He is sued in his official capacity.

14. Defendant JOHN DOHERTY is the New York City Sanitation Commissioner. He is appointed by the Mayor, is the head of the DSNY, and, among other duties, is responsible for the functions and operations of the City relating to the cleanliness of the streets and the disposal of waste, and for the execution of all laws, rules, and regulations pertaining to the DSNY. He is sued in his official capacity.

15. Defendants JOHN DOE and RICHARD ROE *et al.*, whose identities are presently unknown to Plaintiffs, are and were at all times officials, employees and/or agents of the City of New York. They are sued in their official capacities and, with respect to the claim for punitive damages, in their individual capacities.

16. Except as to the actions that form the basis for the claim for punitive damages as to JOHN DOE and RICHARD ROE *et al.*, at all times relevant, the individual defendants JOHN DOE and RICHARD ROE *et al.* were acting under color of state law in the course and scope of their duties and functions as officials, employees and/or agents of the City of New York, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

**Background**

17. On or around September 17, 2011, Occupy Wall Street ("OWS") protesters began a protest encampment in the Park.

18. At all times relevant herein, standard electrical outlets were present in the Park, and were accessible to the public.

19. On or around September 17, 2011, Brookfield Properties, custodians of the Park, switched off the electrical outlets in the park or otherwise caused the electrical outlets in the Park to no longer provide electricity.

20. At some point on or after September 17, 2011, an individual or individuals brought gasoline-powered generators to the Park.

21. These gasoline-powered generators, while present at the park, were used to power computers, wireless internet hubs, cellular phones, and media recording device batteries, among other devices.

22. Until on or about November 10, 2011, individuals used these gasoline-powered generators to power devices used to broadcast OWS events and to broadcast and record police interactions with OWS participants.

23. On or about November 10, 2011, agents of Defendant City of New York seized the aforesaid gasoline-powered generators and removed same from the Park. These gasoline-powered generator seizures are not disputed herein.

24. Thereafter, and prior to OWS' eviction from the Park on November 15, 2011, which is described below, TU was assisting OWS in powering communications equipment present in the Park.

25. TU assisted OWS in powering communications equipment through the use of sixteen (16) "energy bikes" developed and built by TU.

26. These energy bikes, when pedaled, turned rollers which would spin motors attached to battery boxes, containing high capacity batteries akin to car batteries. In doing so, the energy bikes generated approximately one hundred (100) watt hours per hour; in other words, enough power to operate a 100 watt light bulb for one hour.

27. On information and belief, each energy bike, in operation, produced enough electricity each hour to charge ten (10) iPhone 5 smartphones to full capacity.

6

28. On information and belief, the energy bikes were inspected in operation by members of Defendant City of New York's Fire Department, who determined that the energy bikes did not violate fire codes or other applicable public safety rules.

29. TU provided and maintained the energy bikes at the Park.

30. On information and belief, all energy bikes were in new or nearly new condition, having been purpose-built by TU for use in the Park.

**The November 15th Raid and Retrieval of Property Taken on November 15th**

31. On November 15, 2011, at approximately 1 a.m., associates of the NYPD arrived at the Park and began announcing with a bullhorn and written fliers that OWS protesters occupying the Park must immediately remove all property from the Park and leave the Park on a temporary basis so that it could be cleaned.

32. In doing so, said associates of the NYPD, including but not limited to one or more Defendants JOHN DOE and RICHARD ROE, were enforcing a policy or custom of Defendant City of New York.

33. Said policy or custom of Defendant City of New York was adopted and/or promulgated at the discretion of Defendant Mayor Michael Bloomberg.

34. Said policy or custom of Defendant City of New York was adopted and/or promulgated at the discretion of Defendant Commissioner Raymond Kelly.

35. Said policy or custom of Defendant City of New York was adopted and/or promulgated in direct contravention of the administrative enactment of Defendant City of New York's City Planning Commission, whose Plaza Standards governing Zuccotti Park state that the Park must be open and available for public use 365 days per year. *See* Zoning Resolution

("ZR"), §37-60 ("Publicly Accessible Open Areas Existing Prior to October 17, 2007"); ZR §37-623 ("Nighttime closings"); ZR §37-727 ("Hours of Access").

36. ZR §37-727 explicitly states that City Planning Commission authorization for night-time or other closure of a Plaza such as the Park, which is posted as open to the public twenty-four (24) hours per day, can only be granted following a notice and comment period of no less than forty-five (45) days.

37. On information and belief, Defendants adopted and promulgated the policy or custom of announcing and enforcing a *sua sponte* closure of the Park for the express purpose of evicting OWS from the Park.

38. On information and belief, Defendants adopted and promulgated the policy or custom of announcing and enforcing a *sua sponte* closure of the Park for the express purpose of retaliating against OWS for its expressive acts in and around the Park.

39. OWS protesters were by Defendants and other agents of Defendant City of New York told they would be allowed to return when this work was complete.

40. On information and belief, Defendants and other agents of Defendant City of New York had no intention of allowing OWS protesters to return to the Park.

41. The NYPD agents, including but not limited to Defendants, further announced that property OWS protesters failed to remove would be removed and transported to a DSNY garage on 57th Street, where it could be recovered with proper identification.

42. OWS protesters were warned that those who failed to leave the Park or interfered with efforts to remove property from the Park would be subject to arrest.

43. BARBARA ROSS had been near the Park at this time documenting police interactions with protesters and media using a camera.

8

44. BARBARA ROSS had a plastic "hard case" for said camera stored in the media area of the Park at that time.

45. BARBARA ROSS attempted to retrieve the aforesaid "hard case" for said camera following the announcement pled above, but was barred from doing so by one or more Defendant POLICE OFFICERS.

46. When the NYPD announced that all property must be removed from the Park, OWS protesters and TU members attempted to remove equipment from Zuccotti Park.

47. TU members were unable to remove the energy bikes from the Park.

48. Upon information and belief, Mayor Bloomberg authorized and assumed ultimate responsibility for the raid.

49. Prior to the raid on November 15, no notice was given to OWS, TU or its associates that all the equipment would have to be removed from the Park.

50. Prior to seizing the energy bikes, Defendants did not provide a hearing or any other pre-deprivation procedure.

51. Upon information and belief, no emergency situation existed at the Park at or about 1:00 a.m. on November 15, 2011.

52. The presence of the energy bikes in the Park on November 15, 2011 did not create an emergency condition that required the immediate removal the energy bikes.

53. Prior to November 15, 2011, NYPD officers were continually monitoring the condition of the Park, and had the opportunity to observe the equipment in Zuccotti Park.

54. Upon information and belief, members of the NYPD were aware that TU and others maintained a large stock of equipment in Zuccotti Park.

55. The NYPD knew or should have known that, under the circumstances on the night of the raid, it would not be possible to remove all of the equipment within the time allotted by the Defendants.

56. Members of the NYPD, including Defendants, deliberately allowed OWS participants, TU, and BARBARA ROSS an insufficient amount of time to remove their property from the Park.

57. Thereafter, on the morning of November 17, 2012, BARBARA ROSS was present near the Park when police officers of Defendant CITY OF NEW YORK undertook several arrests with a significant degree of force.

58. As a result of said police officers violent pushing and agitating, BARBARA ROSS' knapsack was taken from BARBARA ROSS and left in the middle of a street.

59. Said police officers would not allow BARBARA ROSS to recover her property at that time, or thereafter.

60. On some date thereafter, officers and agents of TU and BARBARA ROSS went to the 650 West 56th Street DSNY Garage to retrieve the TU energy bikes that were seized.

61. DSNY representatives retrieved some of the items that were TU's property.

62. DSNY representatives retrieved no intact, functioning items that were TU's property.

63. DSNY representatives did not retrieve BARBARA ROSS' property.

64. Inter alia, the sixteen (16) energy bikes of TU were seized during the raid and limited components only were recovered, to wit:

    i. Twelve (12) non-useable energy bike "Trainers," i.e., mechanical armatures/geartrains connecting and transferring motive power from bicycles to batteries;

    ii. Two (2) non-useable batteries/battery enclosures; and

    iii. Eight (8) non-useable remnants of bicycles.

65. None of the above-referred recovered components have cognizable usability as recovered; the recovered components are scrap, for all intents and purposes.

66. Plaintiffs estimate the value of the above-referred seized and destroyed equipment to be at least $15,000.00.

67. The components of the above-referred energy bikes alone cost TU approximately $10,000.00.

68. Upon information and belief, in the course of conducting the November 15 raid on the Park, officials, employees and/or agents of THE CITY OF NEW YORK destroyed much of the equipment that was seized in the raid.

69. Defendants John Doe and Richard Roe *et al.*'s conduct in destroying, facilitating the destruction, or otherwise allowing the destruction of BARBARA ROSS' and TU's property ("Plaintiffs' Equipment") was reckless and showed a callous indifference to Plaintiffs' federal and state protected rights.

70. As a result of Defendants' conduct, TU lost valuable property critical to its charitable mission of promoting environmental and infrastructural sustainability in New York and beyond.

71. On February 13, 2012, notices of claim were served on the Comptroller of the City of New York by Plaintiff BARBARA ROSS.

11

72. On or before February 15, 2012, a notice of claim was filed with the City of New York by Plaintiff TU.

73. As a result of Defendant's conduct, TU lost a substantial part of its equipment and was hindered in its charitable mission.

74. Defendants failed to train and supervise their officials, employees and agents, including Defendants John Doe and Richard Roe, et al., so as to prevent the seizure and destruction of Plaintiffs' property, which resulted in the violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.§1983, and the Consitituion and laws of New York State.

75. Defendants' failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

76. The deficiency in the training and supervision of Defendant John Doe and Richard Roe, *et al*, was an actual cause of the deprivation of Plaintiffs' rights and injuries.

77. In taking the actions described above, the Defendants were acting under color of state law.

## FIRST CLAIM FOR RELIEF

### (VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES)

78. Plaintiffs repeat and reallege each and every allegation set forth above.

79. Defendants' seizure of Plaintiffs' equipment constitutes an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983. These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

80. Defendants' seizure, destruction and failure to return or return in a usable condition Plaintiffs' equipment constitutes an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

81. These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

82. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (VIOLATION OF FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

83. Plaintiffs repeat and reallege each and every allegation set forth above.

84. Plaintiffs have a property right in their above-referred property.

85. Defendants' actions in (i) failing to provide a hearing or any other pre-deprivation procedure prior to seizing the above-referred equipment equipment and/or (ii) permitting Plaintiffs an unreasonably short deadline to vacate the Park with all their possessions deprived Plaintiffs of their property without due process of law in violation of the Fourteenth

13

Amendment to the Constitution of the United States and 42 U.S.C. § 1983.  These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

86. Additionally, Defendants' actions in failing to return all of Plaintiffs' equipment or in failing to return the equipment in a usable condition deprived Plaintiffs of their property without due process of law in violation of Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

87. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

88. Plaintiffs repeat and reallege each and every allegation set forth above.

89. In seizing, destroying and/or not returning Plaintiffs' equipment, Defendants interfered with the operations of TU and the ability of BARBARA ROSS to document police activity.

90. Defendants actions were undertaken in response to the expressive activities, expressive association and speech of Plaintiffs.

91. The Plaintiffs' equipment presented no danger to the Defendants or to the public that necessitated the removal and then destruction and/or failure to return the Plaintiffs' equipment.

92. Defendants did not use the requisite care in seizing the and taking possession of the Plaintiffs' equipment, or in ensuring their return.

14

93. Accordingly, Defendants acted with a reckless and callous indifference to Plaintiffs' rights under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

94. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## (INADEQUATE SUPERVISION AND TRAINING)

95. Plaintiffs repeat and reallege each and every allegation set forth above.

96. Defendants had a duty to train and supervise their officials, employees and agents, including John Doe and Richard Roe, *et al*, so as to prevent the arbitrary and unjustified seizure and destruction of the property of persons and entities such as Plaintiffs.

97. Defendants failed to train and supervise their officials, employees and agents, including John Doe and Richard Roe, *et al*, so as to prevent the seizure and destruction of Plaintiff's property, which resulted in the violation of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

98. Defendant's failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

99. The deficiency in the training and supervision of Defendants John Doe and Richard Roe *et al* was an actual cause of the constitutional deprivations and injuries suffered by Plaintiffs.

100. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

**(VIOLATION OF ARTICLE 1, SECTION 8 OF THE NEW YORK CONSTITUTION)**

101. Plaintiffs repeat and reallege each and every allegation set forth above.

102. In the course of the events described above, Defendants violated Plaintiffs' rights under Article 1, Section 8 of the New York State Constitution.

103. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**(VIOLATION OF ARTICLE 1, SECTION 12 OF THE NEW YORK CONSTITUTION)**

104. Plaintiffs repeat and reallege each and every allegation set forth above.

105. In the course of the events described above, Defendants violated Plaintiffs' rights under Article 1, Section 12 of the New York State Constitution.

106. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

**(VIOLATION OF ARTICLE 1, SECTION 6 OF THE NEW YORK CONSTITUTION)**

107. Plaintiffs repeat and reallege each and every allegation set forth above.

108. In the course of the events described above, Defendants violated Plaintiffs' rights under Article 1, Section 6 of the New York State Constitution.

109. As a result of these actions, Plaintiffs were damaged in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

### (CONVERSION)

110. Plaintiffs repeat and reallege each and every allegation set forth above.

111. Plaintiffs have title and/or the right to possess Plaintiffs' equipment.

112. Defendants' actions in seizing the Plaintiffs equipment and/or failing to return the Plaintiffs' equipment when Plaintiffs requested their return constitutes conversion.

113. Plaintiffs are damaged as a result of Defendants' actions.

### NINTH CLAIM FOR RELIEF
### (REPLEVIN)

114. Plaintiffs repeat and reallege each and every allegation set forth above.

115. The Plaintiffs have title and/or the right to possess Plaintiffs' equipment.

116. Defendants' actions in seizing the Plaintiff' equipment and/or failing to return same when Plaintiffs requested their return is the basis for replevin relief.

### TENTH CLAIM FOR RELIEF

### (NEGLIGENCE)

117. Plaintiffs repeat and reallege each and every allegation set forth above.

118. Defendants had a duty to safeguard property seized from individuals and private entities in the course of their official undertakings.

119. The damage, destruction and/or failure to return Plaintiffs' equipment was proximately caused by the negligence, gross negligence, carelessness and/or negligent omissions of Defendants or their officials, employees and/or agents.

120. As a result of the negligence, gross negligence, carelessness and/or negligent omissions of Defendants, their officials, employees and/or agents, Plaintiffs have sustained monetary damages.

### ELEVENTH CLAIM FOR RELIEF

**(NEGLIGENT SUPERVISION AND TRAINING)**

121. Plaintiffs repeat and reallege each and every allegation set forth above.

122. The City of New York and its officials, employees and/or agents acting within the scope of their employment negligently supervised and trained the individual Defendants, who were unfit for the performance of their duties at the Park on November 15, 2011, thereby causing Plaintiffs to suffer injury, including monetary damages.

123. Such injuries and damages were foreseeable results of said failure to adequately supervise the individual Defendants.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs request the following relief:

    1.    A declaratory judgment that Defendants violated Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and Article I, Sections 6, 8, and 12 of the New York State Constitution.

    2.    Damages in the amount of at least $15,000 against the City of New York and the individual defendants, jointly and severally, together with interests and costs, as to Plaintiff TU.

    3.    Damages in the amount of at least $500 against the City of New York and the individual defendants, jointly and severally, together with interests and costs, as to Plaintiff BARBARA ROSS.

    4.    Punitive damages in an amount of at least $1,000 against the individual defendants John Doe and Richard Roe *et al.* who acted in reckless and callous indifference to Plaintiffs' rights as set forth above.

    5.    The cost of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

    6.    Any further and different relief that this Court deems appropriate.

Dated: New York, New York
February 15, 2013

Yours, *etc*.

STECKLOW COHEN & THOMPSON

by:_____~//s//~_____

Samuel B. Cohen (SC 0622)
10 Spring Street  Suite 1
New York, NY 10012
(212) 566-8000
Sam@WylieLaw.com

*Attorneys for Plaintiffs*

20